IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA OLSEN, on behalf of herself and all others similarly situated, and TERI R. SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NELNET, INC., a Nebraska Corporation, NELNET DIVERSIFIED SOLUTIONS, LLC, a Nebraska limited liability company, and NELNET SERVICING LLC, a Nebraska limited liability company,<br><br>Defendants. | 4:18-CV-3081<br><br><br>MEMORANDUM AND ORDER |

The plaintiffs' amended complaint alleges a class action claim for damages regarding the defendants' conduct in the servicing of their student loans. Filing 37. The defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) arguing that the plaintiff failed to state a claim for relief. Filing 39. For the reasons that follow, the Court will grant the defendants' motion in part, and deny the motion in part.

## I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must provide more than labels

and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

In assessing a motion to dismiss, a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly,* 550 U.S. at 555. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See id.* at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

A motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the allegations in the complaint, not the sufficiency of the evidence alleged in support of those allegations. *Stamm v. Cty. of Cheyenne, Neb.*, 326 F. Supp. 3d 832, 847 (D. Neb. 2018); *Harrington v. Hall Cty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 WL 1274534, at *4 (D. Neb. Mar. 31, 2016).

## II. BACKGROUND

The defendants are Nebraska corporations. Filing 37 at 5. Defendant Nelnet Servicing, LLC is a wholly-owned subsidiary of defendant Nelnet Diversified Solutions LLC, which is a wholly-owned subsidiary of defendant

Nelnet Inc. *Id.* The defendants administer, service and collect student loans throughout the United States. Additionally, Nelnet, Inc. owns over fifty other subsidiaries that also service and collect student loans. Filing 37 at 4. The defendants and three other private businesses contract with the federal Department of Education regarding the administration and collection of student loans owned by the Department. Filing 37 at 5. The two loan programs involved in this matter are the Federal Direct Loan Program, which are loans that originate directly with the Department of Education, and loans purchased by the Department pursuant to the Federal Family Education Loan Program. *Id.*

Borrowers who cannot afford to repay their loan pursuant to the standard repayment plan may enroll in an income-based, or income-driven repayment plan. Those plans allow the borrower's monthly payment to be capped at fifteen percent of the borrower's discretionary income with discharge of the remaining debt after twenty-five years of qualifying payments. Filing 37 at 6-7. Income-driven plans are renewed annually, with the borrower filing an application that includes documentary proof of the borrower's income. Filing 37 at 7. The lender or loan servicer is required to notify the borrower when their annual renewal application is due. This notification must be in writing, and must be provided no sooner than 90 days, but no later than 60 days, prior to the borrower's deadline for renewal. *Id.* The notice must also inform the borrower of the consequences of failing to timely renew their repayment plan. *Id.* Two such consequences are an increase in the borrower's monthly payment to the amount that would be due pursuant to a standard repayment plan, and capitalization of the unpaid interest, which involves adding the current interest due and owing to the unpaid loan balance. *Id.*

Timely submission of a renewal application and proof of income entitles the borrower to certain protections. The borrower's income-driven repayment plan may not be cancelled while a renewal application is pending, and the borrower's monthly payment must be maintained until the renewal request has been fully processed. *Id.* Further, loan servicers are directed to process income-driven repayment applications within ten business days, and to "promptly" determine new monthly payment amounts. *Id.* Borrowers who lose the protections of an income-driven repayment plan, and who can no longer afford to make monthly payments pursuant to the standard repayment plan, may ask to have their loan placed in forbearance. Filing 37 at 8. Forbearance allows the borrower to temporarily cease making payments during their period of hardship, but forbearance delays progress toward obtaining loan forgiveness, and any unpaid interest that accrues during forbearance is capitalized to the unpaid loan balance. *Id.*

Plaintiff Jessica Olsen is a citizen and resident of Oregon. Filing 37 at 4. Olsen consolidated her several student loans into a single, federal direct consolidation loan pursuant to a promissory note with the Department of Education. *Id.* On March 7, 2014, Olsen enrolled in an income-driven repayment plan offered by the Department of Education. Filing 37 at 10. On December 5, 2014, the defendants sent Olsen their standard renewal notice advising her that her repayment plan would expire unless her renewal documents were submitted within ten days of January 31, 2015. *Id.* Olsen was advised that she could submit the required documents at the Department of Education's website. On February 10, Olsen submitted her complete renewal application via the Department's website. However, around February 16, the defendants canceled Olsen's income-driven repayment plan and imposed a standard repayment plan, billing her $968.10 per month. *Id.* The defendants

also capitalized $8,669.08 in accrued interest. Filing 37 at 11. Olsen's income-driven repayment plan was not renewed for several months. Because she could not afford the standard repayment amount, she was required to place her loan into forbearance. *Id.* At the end of forbearance, the defendants capitalized an additional $1,061.90 of accrued interest to her loan balance. *Id.*

Plaintiff Teri R. Smith is a citizen and resident of Florida. Filing 37 at 4. Smith first enrolled in an income-driven repayment plan in 2009 with loan servicer ACS Educational Services. Filing 37 at 12. In January 2017, Smith's loan servicer changed to Conduent Educational Services, and she again timely renewed her repayment plan with Conduent. *Id.* On April 7, 2018, Smith timely submitted her renewal application and proof of income to Conduent. Filing 37 at 13. Conduent received Smith's renewal documentation on April 9. On April 20, Smith's federal loan was reassigned to the defendants. On May 18, the defendants began billing Smith for the standard repayment amount of $903.34 and capitalized her accrued interest. *Id.* On July 20, 2018, the defendants notified Smith that her income-driven repayment plan would be approved, lowering her monthly payment to $77.52, but the lower monthly payment would not take effect until September 20. Being unable to afford the $903.34 monthly charge, Smith was forced into forbearance and the defendants again capitalized the interest that had accrued on her loan.

A class action complaint was filed against the defendants on June 8, 2018, identifying only Olsen as the class representative. Filing 1. On September 25, an amended complaint was filed identifying both Olsen and Smith as class representatives. Filing 37. In summary, the plaintiffs allege the defendants; (1) breached their servicing contract with the Department of Education, (2) breached the promissory notes securing the plaintiffs' consolidated loans, (3) tortiously interfered with the promissory notes, (4)

made negligent misrepresentations regarding the plaintiffs' promissory notes, and (5) unjustly enriched themselves at the plaintiffs' expense. Filing 37 at 1.

## III. DISCUSSION

### 1. BREACH OF THE SERVICING CONTRACT

The plaintiffs allege that Nelnet Servicing entered into a servicing contract with the Department of Education on June 17, 2009, and that pursuant to the terms of that contract, the defendants agreed to comply with all federal statutes and regulations regarding the servicing of student loans. Filing 37 at 16-17. The plaintiffs allege that they are intended third-party beneficiaries of the servicing contract between the defendants and the Department of Education and that the defendants materially breached the servicing agreement by failing to administer their loans in accordance with the federal statutes and regulations referenced in the contract. Filing 37 at 17

The defendants' argument for dismissal asserts that the plaintiffs failed to allege facts showing that they are intended third-party beneficiaries of the defendants' servicing contract with the Department of Education. But, even if the plaintiffs allege a plausible third-party beneficiary claim, the defendants argue that the Higher Education Act does not provide a private right of action, and the plaintiffs are attempting an "end-run" around the Act's enforcement regime. Filing 40 at 5-11.

Under Nebraska law,a third-party beneficiary must be acknowledged by express stipulation or "by reasonable intendment that the rights and interests of such unnamed parties were contemplated and that provision was being made for them." *Podraza v. New Century Physicians of Neb.*, 789 N.W.2d 260, 267 (Neb. 2010); *BNSF Ry. Co. v. Seats, Inc.*, 361 F. Supp. 3d 947, 954 (D. Neb. 2019). The party claiming third-party beneficiary status has the burden to show that the provision was for their direct benefit. *Id.*

The amended complaint alleges that the servicing contract requires the defendants to comply with the regulations governing the Department of Education's income-based repayment plan program found at 34 C.F.R. § 685.221. Filing 37 at 11-12. The purpose for this program is to give a borrower experiencing a partial financial hardship the opportunity to pay a portion of their student loan debt, and with successful participation in a plan, qualify for loan forgiveness. *Id.* The plaintiffs plausibly allege facts showing that the servicing contract, by reference to the relevant federal regulations, contemplated that borrowers, like the plaintiffs, may experience financial hardship. To address that likelihood, a program was devised to specifically benefit such borrowers by providing an affordable loan repayment plan along with possible debt forgiveness upon successful completion of the repayment plan. The Court finds that the plaintiffs have sufficiently alleged facts showing that their interests, as financially distressed borrowers, were contemplated and the contract provision allowing for affordable repayment plans was made for them as well as other similarly situated financially distressed borrowers. The Court finds that the plaintiffs have sufficiently alleged facts showing that they are third-party beneficiaries of the servicing contract between the Department of Education and the defendants.

The defendants argue that even if the plaintiffs are third-party beneficiaries of the servicing contract, there is no private right of action in the Higher Education Act allowing the plaintiffs to enforce the Act's regulations. However, the plaintiffs' amended complaint does not allege a cause of action to enforce the Higher Education Act's regulations, or that the Act provides a private right of action. In this regard, the defendants' argument for dismissal asserts a bit of a straw man. The plaintiffs allege that they are the third-party beneficiaries of the loan servicing contract between the defendants and the

Department of Education, and that the defendants breached that agreement when it failed to timely administer their income-driven repayment plan renewal applications. In this regard, the Higher Education Act's regulations function only as the promise the defendants made to the third-party beneficiaries whose loans were being serviced.

Much of the authority the defendants cite fails to distinguish between cases where a plaintiff, in fact or in effect, sued to enforce governmental regulations as opposed to a suit regarding the breach of an agreement that incorporated governmental regulations as the description of the defendant's contractual obligations. *Compare Labickas v. Arkansas State Univ.*, 78 F.3d 333 (8th Cir. 1996), *with Coll. Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005). The defendants place great reliance on *Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110 (2011), and argue that the Court's holding provides that a breach of contract suit where the government contract merely incorporated existing statutory obligations is in essence a suit to enforce the statute. Filing 40 at 8-9. This Court disagrees with the defendants' characterization of the *Astra* Court's holding. In *Astra*, dismissal of the county and county-operated medical providers' claims was predicated on the conclusion that enforcement of the Medicaid drug-pricing program was centralized in the government, thus revealing Congress' intent not to allow the county or county-operated providers a private right of action. 563 U.S. at 119-20.

Although not explicitly framed as such, *Astra* is actually a field preemption case—where Congress elected to occupy the field of Medicaid drug pricing and thereby preclude state-based regulation, as well as a private right of action to enforce the federal regulations. *See Arizona v. United States*, 567 U.S. 387, 401 (2012). In their reply brief, the defendants, without specific

reference to field preemption, assert that the Higher Education Act and its regulations "set forth a highly regimented, cradle-to-grave enforcement mechanism for servicer misconduct." Filing 44 at 3. However, in support of their argument, the defendants reference regulations pertaining only to plaintiff Smith's Federal Family Education Loan, but not plaintiff Olsen's Federal Direct Loan. Moreover, the regulations the defendants referenced are directed at addressing a loan servicer's misconduct and not the borrower's loss, and specifically do not address some of the damages the plaintiffs allege, such as the suspension of loan forgiveness credit and capitalization of accrued interest. *See* 34 C.F.R. § 682.709. The defendants' claim of "cradle-to-grave enforcement" appears to be more hyperbole than accurate.

Moreover, courts have held that Congress' intent to occupy the regulatory field is not evident regarding the Higher Education Act. "The fact that the Secretary has promulgated extensive regulations pursuant to the [Higher Education Act] does not, standing alone, persuade us to the contrary. The existence of comprehensive federal regulations that fail to occupy the regulatory field do not, by their mere existence, preempt non-conflicting state law." *College Loan Corp.*, 396 F.3d at 598. "The Higher Education Act has not been read, in other contexts, as occupying the field and leaving no room for state law to operate. (Citations omitted) The mere existence of a detailed regulatory scheme does not by itself imply preemption of state remedies." *Kearns v. Tempe Tech. Inst., Inc.,* 39 F.3d 222, 226 (9th Cir. 1994).

Neither is there a viable claim for implied conflict preemption. Conflict preemption occurs when it is not possible for the private party to comply with the governmental regulations at issue, or when the state law claim presents "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

The plaintiffs' objective is not to impose a higher or different standard than what the regulations require, or impair in any way the full purpose or objectives of the income-directed repayment plans. Instead, the plaintiffs only seek to enforce the federal regulatory standards that the defendants agreed to administer in their contract with the Department of Education. *See Bible v. United Students Aid Funds, Inc.* 799 F.3d 633, 654 (7th Cir. 2015).

Finally, the defendants' "end-run" argument (which is also referred to as a "disguised claim" argument) postulates that the nonexistence of a private right of action in a federal regulatory regime necessarily preempts state law actions that make violation of any regulation in the regime an element of the state law claim for relief. The defendants' argument in this regard is not well-founded. The absence of a private right of action in a federal statutory or regulatory regime provides no logical basis for dismissal of a state law claim merely because the claim incorporates some element of federal regulation. "To find otherwise would require adopting the novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." *Bible,* 799 F.3d at 654. The Court finds that the plaintiffs have sufficiently pled facts alleging a plausible claim for breach of contract.

## 2. BREACH OF THE PROMISSORY NOTE

The plaintiffs allege that in 2004 they each consolidated their several student loans into single loans with the Department of Education. The consolidated loans were secured by promissory notes, which for each plaintiff consisted of a form promissory note issued or approved by the Department and governed by federal statutes and regulations. Filing 37 at 4. In 2009, the defendants entered into a loan servicing contract with the Department. This servicing contract was extended and modified in 2014 and presently remains

in effect. Filing 37 at 5. The plaintiffs allege that the defendants, in their 2016 filing with the Securities and Exchange Commission, held themselves out to be a party to the servicing contract with the Department of Education and responsible for servicing loans owned by the federal government. Filing 37 at 6. The plaintiffs allege that in 2018, their consolidated loans were serviced by the defendants, and the defendants failed to adhere to the applicable regulations regarding administration of the plaintiffs' renewal applications. This failure resulted in the plaintiffs' damages. Filing 37 at 10-12.

The defendants argue that the plaintiffs' promissory note cause of action must be dismissed due to the absence of privity between the defendants and the plaintiffs. Filing 40 at 11-13. The defendants' argument is predicated on their assertion that they merely acted as the agent for the Department of Education in servicing the plaintiffs' consolidated loans. The defendants rely on what they characterize as a broadly applicable principle of agency law that a principal's contractual obligation cannot be enforced against an agent merely acting as an agent. *Hecker v. Ravenna Bank*, 468 N.W.2d 88, 94 (D. Neb. 1991).

But the plaintiffs do not allege that the defendants are merely acting as the Department's agent. The plaintiffs allege that their promissory notes with the Department were partially assigned to the defendants for servicing, that the defendants held themselves out to be a party to the servicing contract with the Department, and that in servicing their loans the defendants were contractually required to follow all applicable Department of Education statutes and regulations. "[A] nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." *Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015). But once assigned, it necessarily follows that if an original lender can be sued under state law for breach of contract, so may a partial

assignee if it violates the terms of the part of the lending agreement that was assigned. *See In re Ocwen Loan Servicing, LLC, 491 F.3d 638, 645 (7th Cir. 2007).*

The plaintiffs pled that there was a partial assignment of the promissory note to the defendants requiring the defendants to administer their income-driven repayment plans according to the applicable Department of Education regulations. Whether the plaintiffs' promissory notes were actually assigned is a factual matter that may only be resolved once an evidentiary record is in place. The defendants are correct to argue that they are not automatically in privity with the plaintiffs. Privity will depend on the facts regarding any relationship between the parties and whether there has been a valid assignment of the Department's contractual duties regarding servicing of the plaintiffs' consolidated student loans. *See Mazzei, 308 F.R.D. at 110.* But at this juncture, the amended complaint allows the Court to conclude the defendants had an obligation to the plaintiffs resulting from their alleged acceptance of an assignment of the duty to service the plaintiffs' consolidated loans. *See Mirandette v. Nelnet, Inc., 720 Fed. App'x. 288 (6th Cir. 2018).*

The defendants also argue that the plaintiffs' promissory note claim must be dismissed because the plaintiffs' student loans were consolidated in 2004, but the amendments to the regulations regarding servicing that the plaintiffs cite in support were not enacted until 2013. Filing 40 at 14-15. The income-based repayment plan regulations that the defendants reference, however, identify eligible loans as "any outstanding loan made to a borrower." 34 C.F.R. § 685.221(a)(2). Because the 2013 regulations are applicable to "any outstanding loan" the regulations are necessarily intended to be retroactive to existing loans. Further, the servicing contract attached to the plaintiffs' amended complaint provides that the defendants (as contractors) "will be

responsible for maintaining a full understanding of all federal and state laws and regulations . . . and ensuring that all aspects of the service continue to remain in compliance as changes occur" and "provide a service flexible enough to handle new requirements generate by Congress and respond to legislative mandates and policy changes." Filing 37-1 at 23.

Finally, the defendants argue that the promissory note claim, like the breach of contract claim, is an end-run around the Department of Education's regulatory regime. The Court does not accept the defendants' end-run argument in the context of the plaintiffs' promissory note claim for the same reasons the Court rejected this same argument in the context of the plaintiffs' contract claim. The defendants' motion to dismiss the plaintiffs' claim for relief regarding the breach of a promissory note must be denied at this stage of the litigation.

### 3. TORTIOUS INTERFERENCE

Pled as an inconsistent but alternate theory of recovery to their promissory note claims,[1] the plaintiffs allege that the defendants tortiously interfered with the Department of Education's administration of their consolidated student loans. Filing 37 at 18-19. The defendants argue that the plaintiffs' cause of action must be dismissed because the agent of a principal cannot be liable for interfering with a contract between the principal and a third-party. For authority, the defendants cite to this Court's decision in *Bussing v. COR Clearing, LLC*, 20 F. Supp. 3d 719, 737 (D. Neb. 2014), *abrogated on other grounds by Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 778 (2018).

---

[1] "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

The business relationship that the plaintiffs claim has been interfered with concerns the administration of the plaintiffs' promissory notes. That contract is alleged to be between the plaintiffs and the Department of Education, but with the Department's pertinent obligations assigned to the defendants. In other words, the plaintiffs are alleging that the defendants are tortiously interfering with that part of the Department's contract assigned to the defendants. But, a party cannot be held liable in tort for interfering with its own contract. *Huff v. Swartz*, 606 N.W.2d 461, 467 (Neb. 2000); *Bussing*, 20 F. Supp. 3d at 737.

The plaintiffs respond that if the defendants are considered merely agents of the Department, then acting outside the scope of their agency may subject the defendants to liability for tortious interference. Filing 41 at 28. In determining whether an agent or other third-party tortiously interferes with a contract or business relationship, a court distinguishes between conduct within the general scope of the interferer's agency and conduct in furtherance of an individual or private purpose unrelated to the principal's interests. *Bussing*, 20 F. Supp. 3d at 737. If the alleged interferer acts within the general scope of his or her authority for the principal, then the law recognizes the conduct to be consistent with the principal's interests. *Bussing*, 20 F. Supp. 3d at 738. For the plaintiffs' tortious interference claim to survive dismissal, they must allege facts showing the defendants were serving a principal other than the Department, or pursuing a benefit for the defendants that was at odds with the Department's interests. *Id.*

The plaintiffs argue that the defendants' failure to administer the income-driven repayment plan renewal applications consistent with the controlling federal regulations was both unlawful and self-serving. The implication being, that because the conduct was unlawful, it therefore

benefited the defendants and was at odds with the Department's interest. Filing 41 at 28. The plaintiffs' argument stretches the notion of a self-serving purpose and personal benefit too far. The plaintiffs' amended complaint alleges that the defendants were doing what they contracted to do—servicing student debt. They just failed to service the renewal applications consistent with the contract requirements. Negligence or bureaucratic incompetence does not plausibly lead to a conclusion that the conduct was self-serving, contrary to the principal's interests, or done for a personal benefit.

Moreover, the plaintiffs allege only that the defendants' failure to timely renew the plaintiffs' income-driven repayment plans benefited the defendants by extending the plaintiffs' loans over time and delaying loan forgiveness, thus keeping the plaintiffs' accounts open for servicing. It is not plausible to conclude that the extra $2.00 per month per account the defendants would earn by extending a loan would be a motivating factor for delaying authorization of an income-driven repayment plan—even when multiplied by a thousand borrowers—when the defendants' contract with the Department is worth millions of dollars. Importantly, nowhere do the plaintiffs allege that the defendants' conduct was at odds with the general scope of its assigned authority for the Department. *See Bussing*, 20 F. Supp. 3d at 738. The allegations concern the competence of the defendants' performance within the general scope of its assigned authority. The plaintiffs' facts fail to allege a plausible claim for relief regarding tortious interference with a contract or business relationship.

### 4. NEGLIGENT MISREPRESENTATION

The plaintiffs allege that the defendants falsely represented the terms of their loans, and falsely represented that the plaintiffs were not eligible for

renewal of their income-driven repayment plans notwithstanding the timely submission of their renewal applications. The plaintiffs also allege that the defendants falsely represented that the plaintiffs were required to make substantially larger payments on their loan balances according to the standard repayment plan, which resulted in further financial hardship and an inevitable request for forbearance. Filing 37 at 20. The plaintiffs argue that the defendants failed to exercise reasonable care or competence before communicating critical information about the plaintiffs' repayment plan eligibility and that the plaintiffs justifiably relied on the defendants' misrepresentations to their detriment. *Id*.

A prima facie case for negligent misrepresentation in Nebraska requires a showing that (1) a representation was made; (2) the representation was false; (3) the representation was made recklessly or negligently as to its truth; (4) the representation was made with the intention that it should be relied upon; (5) the representation was relied upon; and (6) damages were suffered as a consequence. *Nelson v. Wardyn*, 820 N.W.2d 82, 87 (Neb. App. 2012). Negligent misrepresentation is a subspecies of fraud, and as such, pursuant to Fed. R. Civ. P. 9(b), a pleading must "state with particularity the circumstances constituting the fraud." *Farm Credit Serv. of America, FLCA v. Haun*, 734 F.3d 800, 805 (8th Cir. 2013).

The defendants argue that the plaintiffs' amended complaint fails to plead fraud according to the "rigorous standards imposed by [Rule 9(b)]." Filing 40 at 18. Rule 9(b) standards are not quite so rigorous as the defendants suggest. Pleading the particular circumstances constituting fraud is interpreted in harmony with the principles of notice pleading. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). Generally, a pleading alleging negligent misrepresentation must include the time, place, and

contents of the false representations, the identity of the entity or source of the misrepresentation, and what was obtained or given up as a consequence of the false representation. *Id.* The heightened pleading standard for complaints of fraud or misrepresentations is intended to allow a quick and specific response to potentially damaging allegations. *Id.* However, Rule 9(b) provides that knowledge, intent and other conditions of a defendant's mind may be generally alleged. Further, facts constituting the misrepresentation that are peculiarly within the defendant's knowledge may be plead on information and belief. *Id.*

The defendants claim that the amended complaint fails to identify which of the three defendant corporate entities made the purported misrepresentations, and further, which particular individual made the purported misrepresentations. Filing 40 at 19. The plaintiffs pled that "Nelnet" or the "defendants" made the misrepresentations at issue. Also pled were the content of the misrepresentations, the timeframe in which the misrepresentations were made, and the manner in which the misrepresentations were communicated. Filing 37 at 10-13. Which of the three corporate entities—all functioning under the "Nelnet" banner—actually made the representations, and which specific Nelnet employee was responsible for each such misrepresentation is a matter within Nelnet's corporate knowledge. The purpose of a heightened pleading standard for fraud and misrepresentation is to allow a party to quickly and specifically respond to a potentially damaging allegation. In order to serve that purpose, on these facts, it is unnecessary for the plaintiffs to further plead that which Nelnet should already know.

The defendants next assert that the plaintiffs did not "state with particularity" when or where the misrepresentations occurred, or what "comprised the exact contents of those communications." Filing 40 at 20. The

Court disagrees. Regarding each plaintiff, the amended complaint alleges that within a specific time period the plaintiffs timely submitted renewal applications, which should have continued their existing monthly payment plan obligation. But instead of continuing the plaintiffs' existing income-driven repayment plans, the defendants negligently misrepresented that the plaintiffs were no longer eligible for an income-driven repayment plan and that they were required to pay a substantially higher monthly amount pursuant to the standard repayment plan. As a consequence, the plaintiffs experienced further financial distress and were required to seek forbearance. Filing 37 at 10-12. The Court finds that the plaintiffs' amended complaint alleged sufficient facts to identify the time, place, content and source of the misrepresentations, and the consequences of the misrepresentations to the plaintiffs.

The defendants also assert that the plaintiffs' negligent misrepresentation claim is "expressly preempted" by the Higher Education Act, specifically, 20 U.S.C. § 1098g, which provides: "Loans made, insured, or guaranteed pursuant to a program authorized by Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 *et seq.*) shall not be subject to *any disclosure requirements of any State law*." (Emphasis supplied) Filing 40 at 20-24. Express preemption is where a statute's express language declares Congress' intent to displace state law. *Hillsborough Cty. v. Automated Med, Labs., Inc.*, 471 U.S. 707, 713 (1985).

The Court disagrees with the defendants' argument and finds persuasive the analysis of a very similar claim in *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529 (M.D. Pa. 2018). There, the Commonwealth of Pennsylvania claimed that Navient affirmatively steered borrowers with long-term financial problems into forbearance rather than into more appropriate income-driven repayment plans, and failed to properly advise borrowers of the consequences

of not timely renewing income-driven repayment plans. *Id.* at 537-38. Navient argued that the Commonwealth's loan servicing claims, made pursuant to its Consumer Protection Laws, were preempted by the Higher Education Act. The court concluded that the meaning of "any disclosure requirements of any State law" in §1098g did not sweep as broadly as Navient would like.

> The HEA and its associated regulations only require that particular disclosures are to be made in the delivery of federal student loans and generally prescribes how those disclosures should be made. It does not preempt the enforcement of a statute of general applicability under a state's traditional police power, here, the Commonwealth's state consumer protection law, the CPL, which proscribes unfair and deceptive acts or practices in commerce.

*Id.* at 549-50.

Similarly, here the plaintiffs are not complaining about disclosures regarding the initiation of a consolidation loan, or the terms and conditions of a loan. The plaintiffs are not seeking to add to, or take away from, the disclosures the Higher Education Act requires a lender or loan servicer to make. Instead, the plaintiffs assert that negligent misrepresentations made by the defendants in the course of administering their loans caused damage. The defendants do not argue, nor could the defendants credibly argue, that the Higher Education Act gives it license to disclose to a borrower whatever monthly payment amount it may randomly select. Certainly, the Higher Education Act would require the defendants to accurately inform a borrower of their monthly obligation when servicing an account. The plaintiffs' claim in

this regard only seeks damages for the defendants' alleged negligence in falsely representing that which they were required to accurately represent. The plaintiffs allege facts showing a plausible claim for relief regarding negligent misrepresentation.

## 5. ACCOUNTING

An accounting action at law involves a contract, either expressed or implied. *Lone Cedar Ranches, Inc. v. Jandebeur*, 523 N.W.2d 364, 368 (Neb. 1994). To maintain an action for accounting at law, the plaintiffs must show that the defendants received money that was not theirs, that the defendants are bound to account to the plaintiffs, and that the plaintiffs are the owners of the money. *Id.* The defendants' first argument for dismissal is that there is no contractual relationship between the parties. Filing 40 at 25. But the plaintiffs pled that the Department of Education partially assigned the administration of their loan consolidation promissory notes to the defendants. The Court has already determined that allegation was sufficient to allege the existence of a contractual relationship between the parties.

Second, the defendants argue that the plaintiffs failed to plead that the defendants received the plaintiffs' money. Specifically, the defendants contend that there is no allegation that the plaintiffs made overpayments, and in any event, the payments that were made would have been made to the Department of Education—not the defendants. Filing 40 at 25. The defendants' representation of what the plaintiffs pled is incorrect. The plaintiffs specifically pled that the defendants "administer and collect student loans throughout the United States and Canada." Filing 37 at 4. Further, there is a plausible inference in the facts pled that during the time after the plaintiffs' monthly installment increased to the standard repayment amount, but before they

sought forbearance, the plaintiffs made payments in excess of what was required in their income-driven repayment plans and that the plaintiffs made their monthly payment (including any overpayment) to the defendants.

The defendants' assertion in their brief that payments are made to the Department of Education represents the assertion of an avoidance. That assertion may not be considered by the Court in a motion to dismiss. The defendants' avoidance allegation would be properly raised in the defendants' answer to the amended complaint. See Fed. R. Civ. P. 8(c)(1). The Court finds that the plaintiffs alleged facts showing a plausible claim for relief regarding action for an accounting at law.

### 6. UNJUST ENRICHMENT

The plaintiffs allege that the defendants received money to which they were not entitled, that the defendants retained possession of the money, and in fairness the defendants should be required to pay the money back to the plaintiffs. The money that the plaintiffs assert was wrongfully received and retained concerns the plaintiffs' payments and fees that were assessed when their income-driven repayment plans were withdrawn. Filing 37 at 22. Nebraska law provides that to recover on an unjust enrichment claim for money had and received, the plaintiffs must allege facts showing (1) the defendants received money, (2) the defendants retained possession of the money, and (3) the defendants in justice and fairness ought to pay the money to the plaintiffs. Kanne v. Visa U.S.A. Inc., 723 N.W.2d 293, 302 (Neb. 2006).

The Court finds that the factual allegations pled in the amended complaint fail to allege a plausible basis to believe that the defendants retained money that in fairness should be paid to the plaintiffs. The plaintiffs allege that the defendants' contract with the Department of Education provides that

Nelnet is paid a fee for servicing the loans. That fee is based on the various loan status categories and the volume of loans in each category. Filing 37 at 8-9. The plaintiffs allege that the fee structure incentivizes Nelnet to move borrowers out of income-driven replacement plans and thereby delay or impede the borrower's ability to achieve loan forgiveness. The plaintiffs allege that by delaying loan forgiveness, Nelnet keeps more accounts open and the Department pays more servicing fees.

Nowhere do the plaintiffs allege that the defendants retain any portion of the increased monthly payment, or receive a benefit of any kind from capitalization of the interest. As such, there is no plausible basis in the complaint to conclude that the defendants retained money that should be returned to the plaintiffs. The defendants' fee structure does not include any contribution from the plaintiffs' monthly loan obligation payment. Although the plaintiffs allege that the defendants should provide an accounting, that claim for relief only requires that the defendants received money from the plaintiffs, not that the defendants retained that money and should pay it back to the plaintiffs. The Court is mindful that the plaintiffs' allegations include two paragraphs that tracked the elements of a cause of action for unjust enrichment. Filing 37 at 22. But labels, conclusions and a formulaic recitation of the elements of a cause of action are not sufficient to state a claim for relief. *Twombly,* 550 U.S. at 555. The Court finds that the plaintiffs failed to allege facts showing a plausible claim for unjust enrichment.

IT IS ORDERED:

1.   The defendants' motion to dismiss (filing 39) is granted in part and in part denied.

2.     The plaintiffs' claims for tortious interference with a
       contract or business relationship and unjust enrichment
       claims are dismissed.

3.     This matter is referred to the Magistrate Judge for case
       progression.

Dated this 21st day of May 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge